In re BYRNE.

(Supreme Court, Appellate Division, First Department.   October 27, 1908.)

1. ELECTIONS (§ 132*)—NOMINATIONS—ORGANIZATION OF CONVENTION—SELEC-
   TION OF TEMPORARY CHAIRMAN—STATUTORY PROVISIONS.

   Primary Election Law (Laws 1898, p. 352, c. 179) § 10, provides that a
   nominating convention shall be called to order and a temporary chairman
   chosen on the call of the roll of the convention, and that the person call-
   ing the convention to order shall exercise no other function than that of
   calling the roll for election of temporary chairman and declaring the re-
   cult, was not complied with where a convention was called to order by
   one designated by the county committee, who adjourned it until the next
   night for lack of a quorum, and on the next night called the roll to see
   if a quorum were present, which being found to be the fact, a temporary
   chairman was elected by acclamation.

   [Ed. Note.—For other cases, see Elections, Dec. Dig. § 132.*]

2. ELECTIONS (§ 132*)—NOMINATIONS—ORGANIZATION OF CONVENTION—SELEC-
   TION OF TEMPORARY CHAIRMAN.

   Under Primary Election Law (Laws 1898, p. 352, c. 179) § 10, the calling
   of the roll by the person authorized to call the convention to order, for
   the election of a temporary chairman, initiates the meeting of the con-
   vention, and, until done, the organization is not complete, and a valid
   nomination cannot be made.

   [Ed. Note.—For other cases, see Elections, Dec. Dig. § 132.*]

3. ELECTIONS (§ 132*)—NOMINATIONS—ROLL OF CONVENTION—STATUTORY PRO-
   VISIONS.

   Under Primary Election Law (Laws 1898, p. 352, c. 179) § 10, the roll
   of the convention, upon the calling of which a temporary chairman shall
   be chosen, is the roll provided for by section 8, subd. 4 (page 350), requir-
   ing the custodian of primary records to make up the rolls of the conven-
   tions for which delegates were elected at the primary elections and add to
   the roll delegates from political divisions not within the operation of the
   primary law.

   [Ed. Note.—For other cases, see Elections, Dec. Dig. § 132.*]

4. ELECTIONS (§ 132*)—NOMINATIONS—OATH OF TEMPORARY ·CHAIRMAN—STAT-
   UTORY ·PROVISIONS.

   Under Primary Election Law (Laws 1898, p. 352, c. 179) § 10, provid-
   ing that, before entering upon his duties, the temporary chairman of a
   nominating convention must be sworn, which oath shall be filed with the
   convention records, the oath should be reduced to writing and authenticat-
   ed by the officer before whom taken; and, while the formal certificate of
   the officer might perhaps be prepared after the convention had adjourned,
   an oath annexed to the convention minutes, signed and sworn to on the
   day following the convention, is insufficient.

   [Ed. Note.—For other cases, see Elections, Dec. Dig. § 132.*]

Appeal from Special Term.

Petition by Michael G. Byrne to reverse a decision of the bureau of
elections accepting a certificate of nomination of Rhinelander Waldo
as candidate of the Independence League for Congress in the Fif-
teenth congressional district.   From an order of the Special Term
refusing to strike the candidate's name from the official ballot, peti-
tioner appeals.   Reversed, and petition granted.

Argued before PATTERSON, P. J., and INGRAHAM, CLARKE,
HOUGHTON, and SCOTT, JJ.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Abraham G. Mayer, for appellant.
Daniel F. Cohalan, for respondent.

PER CURIAM. A convention of the Independence League to nominate a candidate for Congress from the Fifteenth congressional district was duly called to be held on the 7th of October, 1908, at No. 102 West 101st street, at 9 o'clock p. m., and the chairman of the county committee of the Independence League designated one Nicholas P. Sinnott to call the convention to order. On the night of the 7th of October, Nicholas P. Sinnott, the person designated by the chairman of the county committee, called the convention to order and adjourned the convention until the 8th of October, at which time Mr. John McBroon was elected temporary chairman and Mr. Louis Wolf was duly elected temporary secretary. Subsequently the temporary chairman was elected permanent chairman and the temporary secretary was elected permanent secretary, and Mr. Rhinelander Waldo was then unanimously nominated as the candidate for member of Congress from the Fifteenth congressional district. A committee was then appointed to fill vacancies, pursuant to section 66 of the election law (Laws 1896, p. 931, c. 909), and the convention adjourned. On October 9, 1908, what purported to be a certificate of this nomination, signed by the chairman and secretary, was filed with the bureau of elections. To this certificate objections were filed, whereupon an amended or supplemental certificate, duly verified, was filed on October 17, 1908. Objection was made to this nomination before the bureau of elections, and proof was taken by the commissioners. These objections were overruled, whereupon an application was made to the Special Term of the Supreme Court to reverse the decision of the bureau of elections, on the petition of one Michael G. Byrne as a citizen of the state of New York and a member of the Independence League party, which application was denied, and from the order entered thereon the petitioner appeals.

There are two objections taken to this certificate which we deem fatal. Section 10 of the primary election law (chapter 179, p. 352, of the Laws of 1898) provides that:

"Every convention shall be called to order by the chairman of the committee with whom the call originated, or by a person designated in writing for that purpose by such chairman, and such chairman or person so designated shall have the custody of the roll of the convention until it shall have been organized. * * * The temporary chairman of the convention shall be chosen on a call of the roll and as the name of each delegate is called he shall rise in his place and declare his choice for such officer. The person who calls the convention to order shall exercise no other function than that of calling the official roll of the delegates on the vote for temporary chairman and declaring the result thereof."

It is undisputed in this case that this provision of the law was not complied with. The person designated by the chairman of the county committee testifies before the board of elections of the city of New York that he called the convention to order about 9 o'clock, but adjourned the meeting until the following night because there was not enough delegates present to compose a quorum; that on the following

night the convention reassembled and the person designated by the chairman of the county committee of the Independence League called the roll; that after the calling of the roll, from which he testified he ascertained that there was a quorum present, a temporary chairman was elected by acclamation, and there was no other roll called after the formal calling of the roll to ascertain whether there was a quorum present. The person elected as chairman of the convention testified, that Mr. Sinnott called the convention to order, that the temporary chairman was elected by acclamation, that he took the chair, and a temporary secretary was elected in the same way.

The careful provisions of the statute providing for the temporary organization of the convention requires the person authorized to call the convention to order to call the roll for the election of a temporary chairman. This provision initiates the meeting of the convention, and until this provision of the statute is complied with the organization of the convention is not complete and the convention is not in a position to transact business or make a valid nomination. To organize the convention the choice of a temporary chairman is required, and the statute provides how the temporary chairman shall be elected. It must be upon a call of the roll of the convention, "and as the name of each delegate is called he shall rise in his place and declare his choice for such officer." The roll of the convention is provided for by subdivision 4 of section 8 of the act (page 350). That subdivision provides that:

"The custodian of primary records shall prepare a certified statement of the result of the primary election of each party participating therein and shall make up the rolls of the conventions for which delegates were elected at such primary elections, so far as such conventions are to be made up of such delegates, and add thereto the names of any delegates entitled to act in such conventions from any of the political divisions of such county not included within any city or village to which this act is applicable, * * * and shall promptly mail, and, if requested, deliver one copy thereof to the respective secretaries of the proper political committees of the several parties participating in such primary election."

And it is this official roll of the convention that the person authorized to call the convention to order is required to call, and upon the call of which the temporary chairman of the convention shall be chosen. There can be no election of a temporary chairman of a convention, except by a compliance with the provisions of this statute, and there can be no nomination by the convention until after the selection of a temporary chairman; and as the provision of this statute was not complied with the convention never was legally organized or authorized to make a nomination.

The other objection relates to the oath required to be taken by the temporary chairman. Section 10 of the primary law (page 353) provides that:

"Before entering upon their duties, the temporary and permanent chairman of every convention, and the chairman of any committee on contested seats therein, shall respectively take an oath to faithfully perform the duties of their office, which oath may be taken before any officer authorized by law to administer an oath and shall form a part of, and be filed with the records of the convention."

This provision seems to require that before either the temporary or permanent chairman of the convention shall perform any of the functions of the office ·to which they have been elected they should take the oath prescribed, and this oath must be taken before an officer authorized by law to administer an oath and shall form a part of and be filed with the records of the convention. It is necessary, therefore, that this oath should be reduced to writing and authenticated by the officer before whom it is taken. It may be that the formal certificate of the officer that the oath had been administered could be prepared and executed after the convention had adjourned, but in that case it must appear that the oath was actually administered to the temporary and permanent chairman before they entered into the discharge of their duties. To the minutes of this convention, filed with the board of elections, there is annexed the oath of the temporary chairman, which deposes that he was the temporary chairman of the Fifteenth congressional district convention of the Independence League party to nominate candidates for members of Congress—

"now being held at 102 West 101st street, New York, on the 8th of October, 1908, and having been duly elected as such, I do solemnly swear to faithfully perform the duties of said office as permanent chairman of the said convention."

This is signed by the officer and was sworn to before a notary on the 9th of October, the day following that upon which the convention was held and the nomination made. The temporary chairman, therefore, swears that he will faithfully perform the duties of permanent chairman, and he takes that oath upon the 9th of October, the day after the convention was held and the duties had been performed. It is quite apparent that this is not a compliance with the statute, and there is, therefore, no evidence that before the officer had performed his duty he took the oath that the statute requires.

As we think this certificate should have been rejected by the board of elections upon these two grounds, it is not necessary to consider the other objections to the certificate taken by the appellant.

It follows that the order appealed from must be reversed, with $10 costs, and the application granted.